T.C. Memo. 2020-64

UNITED STATES TAX COURT

MARTIN DOUGLAS FRANTZ, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15440-18W.                     Filed May 19, 2020.

Martin Douglas Frantz, pro se.

<u>Nicholas R. Rosado</u> and <u>Michael Skeen</u>, for respondent.

MEMORANDUM OPINION

URDA, <u>Judge</u>:  Petitioner, Martin Douglas Frantz, seeks review under

section 7623(b)(4) of determinations of the Internal Revenue Service (IRS)

Whistleblower Office (WBO) that declined to make whistleblower awards to him

[*2] and his wife.[1]  Mr. and Mrs. Frantz submitted an award application to the WBO asserting that the trustee of their chapter 7 bankruptcy estate significantly understated the estate's tax liability.  The WBO issued a denial of the application with respect to the bankruptcy estate and a rejection of it with respect to the trustee.  Mr. Frantz appealed to this Court, arguing that the WBO failed to properly investigate.

Respondent has moved for summary judgment under Rule 121, contending that the WBO did not abuse its discretion with respect to these determinations.  Mr. Frantz objected and filed a cross-motion for summary judgment.  We will grant respondent's motion and deny Mr. Frantz'.

### Background

The following facts are based on the parties' pleadings and motion papers, including the attached declarations and exhibits.  See Rule 121(b).  Mr. Frantz lived in Idaho when he timely filed his petition.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*3] A.    Submission of Form 211

On April 9, 2018, the Frantzes submitted a Form 211, Application for Award for Original Information, to the WBO relating to their chapter 7 bankruptcy estate's 2013-17 tax returns. In the blank space for "[n]ame of taxpayer * * * and any related taxpayers who committed the violation" the Frantzes listed both the estate of Martin and Cynthia Frantz and the bankruptcy estate trustee.

The Frantzes alleged--and for purposes of deciding respondent's motion, we assume (without finding)--that the trustee filed false tax returns on behalf of the estate, improperly omitting significant amounts of income. Specifically the Frantzes claimed that the trustee filed a "false" 2016 estate tax return that included "no K-1s stating that $-0- taxes due." According to the application, a certified public accountant (C.P.A.) working from information provided by the Frantzes concluded that the trustee's supposed malfeasance had produced a $1,411,145 underpayment of Federal and State income taxes for 2017, and estimated a total underpayment of "gross tax" of $2,250,000 from 2014 to 2017.[2] The Frantzes further stated that they had reported the "tax fraud" to the Idaho Department of Revenue.

---

[2]Although the application referenced the estate's 2013 taxable year, the Frantzes did not include the 2013 taxable year in the estimation of the shortfall.

[*4]    The Frantzes included with their Form 211 a letter from the C.P.A. who had calculated this shortfall, as well as the bankruptcy estate's 2016 tax return (prepared by the trustee) and a draft amended 2017 tax return for the estate, as prepared by the C.P.A.[3]  The letter stated, inter alia, that the "estimated 2017 income tax return [was] based on information * * * [the Frantzes] have provided us" and further advised that "[t]his return should not be filed under any circumstance."

B.      The WBO's Consideration

The WBO assigned two claim numbers in response to the Frantzes' submission:  one for the bankruptcy estate (estate claim) and one for the trustee

---

[3]In support of his motion for summary judgment, respondent attached a copy of the Frantzes' Form 211 but none of the supporting documents.  In his pleadings Mr. Frantz has supplied what he claims to be the supporting documents to the Frantzes' Form 211 (i.e., the C.P.A. letter, the 2016 estate tax return, and the draft amended 2017 estate tax return prepared by the Frantzes' C.P.A.).  In addition to arguing that these documents are immaterial, respondent argues that we should not consider the amended 2017 tax return introduced by Mr. Frantz in this proceeding because it is dated well after the Frantzes submitted the Form 211 (and thus was not part of the packet considered by the WBO).  Mr. Frantz counters that the substance of the return submitted to the Court is the same as that attached to the Form 211.  We will consider these documents in the light most favorable to Mr. Frantz when deciding respondent's motion and accordingly will view the draft amended tax return before us as the same in substance as the one attached to the Frantzes' Form 211.

[*5] (trustee claim). These claims proceeded along different paths, which we look down in turn.

    1.    <u>Estate Claim and Claim Expansion</u>

Two classifiers[4] under the direction of the WBO reviewed the Form 211 with respect to the estate. In the course of the review the second classifier observed that the Frantzes themselves might have received unreported income (as the chapter 7 debtors) in light of the Frantzes' position that their bankruptcy estate had filed false tax returns omitting income. Consistent with the second classifier's recommendations, the WBO opened a new claim into the Frantzes' own Federal individual income tax reporting (ancillary claim) and referred both the estate claim and the ancillary claim to the WBO area office for additional review.

A WBO area office coordinator later concluded that neither the estate claim nor the ancillary claim warranted an examination and recommended the denial of both. As to the former, she considered the Form 211 and the problems identified by the Frantzes' C.P.A., namely that the 2016 estate tax return had reported a sales transaction of "Assets, Partnership", but had not included a Form 1065, U.S. Return of Partnership Income, Schedule K-1, Partner's Share of Income,

---

[4]"Classification's role is only to determine if the information on the Form 211 warrants further review." Internal Revenue Manual (IRM) pt. 25.2.1.3.1(2) (Jan. 11, 2018).

**[*6]** Deductions, Credits, etc.  The coordinator noted that the Frantzes had not detailed any unreported Schedule K-1 income and concluded, from her own review of the IRS' information returns processing system[5] that the Frantzes' claim implicated only $15,208, which did not merit further examination.  With respect to the ancillary claim, the coordinator found no alleged or identified violations in the Frantzes' individual income tax reporting, noting further that the Frantzes were "not alleging a violation of * * * [their own] 1040".  Both claims were subsequently returned to the tax analysts at the WBO.

Thereafter, a tax analyst drafted an award recommendation memorandum (ARM) consistent with the conclusions of the area office coordinator.  The ARM recommended to the manager of the WBO Award Recommendation & Coordination unit that the claims be denied because "little or no audit potential exists", explaining that the potential adjustments were "below threshold to warrant an examination."

The WBO subsequently denied the estate claim and the ancillary claim rather than forward them to an IRS examiner for possible further action, including

---

[5]The IRS' information returns processing system receives data submitted by employers and other third parties reporting taxpayer income during the year.  See Oman v. Commissioner, T.C. Memo. 2010-276, 100 T.C.M. (CCH) 548, 551 (2010).

**[\*7]** the initiation of an administrative or judicial action or the collection of proceeds.  On July 25, 2018, the WBO informed the Frantzes of these denials in a letter which stated, inter alia, that "the information you provided did not result in the collection of any proceeds" and that, therefore, "you are not eligible for an award."

  2. <u>Trustee Claim</u>

  The same two classifiers who considered the estate claim also evaluated the trustee claim.  During his review the second classifier documented that "[n]o tax issue [was] stated or identified".  He recommended rejection on the ground that the Frantzes' allegations were "not specific, credible, or are speculative".  He explained that the Frantzes' claim provided "[n]o specific and credible information about a federal tax issue or non-compliance" as would "support a potential tax violation/allegation", and further failed to supply "documentation to support the claim."

  In the same July 18, 2018, ARM in which she recommended denial of the estate and ancillary claims, the tax analyst from the WBO also recommended that the trustee claim be rejected.  The ARM relied on the grounds provided by the second classifier, i.e., the allegations regarding the trustee were "not specific, credible, or are speculative".

**[*8]**  On July 25, 2018, the WBO formally rejected the trustee claim with a letter entitled "Final Decision Under Section 7623(a)".  The letter stated in pertinent part that "[t]he claim has been rejected because the information provided was speculative and/or did not provide specific or credible information regarding tax underpayments or violations of internal revenue laws."[6]

---

[6]As explained, the WBO summarily rejected the trustee claim and did not forward it to an operating division of the IRS for consideration of a possible audit and thus did not proceed with any judicial or administrative action or collect any proceeds on the basis of the Frantzes' allegations.  These facts, however, are not cited as the basis of the WBO's rejection of the trustee claim and are not the basis for our opinion.  See SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."); see also Alber v. Commissioner, T.C. Memo. 2020-20, at *5 n.3.

**[\*9]** C.      Tax Court Proceedings

Mr. Frantz[7] timely petitioned this Court for review of the WBO's

determinations.[8]  Respondent subsequently filed a motion for summary judgment

to which Mr. Frantz objected and cross-moved.

Discussion

I.      General Principles

A.      Summary Judgment

The purpose of summary judgment is to expedite litigation and avoid costly,

time-consuming, and unnecessary trials.  Fla. Peach Corp. v. Commissioner, 90

T.C. 678, 681 (1988).  Under Rule 121(b) the Court may grant summary judgment

when there is no genuine dispute as to any material fact and a decision may be

rendered as a matter of law.  Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520

(1992), aff'd, 17 F.3d 965 (7th Cir. 1994).  In deciding whether to grant summary

judgment, we construe factual materials and inferences drawn from them in the

---

[7]Although Mr. and Mrs. Frantz jointly submitted the award application to the WBO, Mr. Frantz is the sole petitioner in this case.

[8]In his petition Mr. Frantz checked the box to indicate that he sought review of a "Notice of Determination Concerning Your Request for Relief From Joint and Several Liability" (innocent spouse relief) with respect to tax years 2013 through 2018.  We dismissed his claim for lack of jurisdiction insomuch as it related to the innocent spouse relief from 2013 to 2018 and treated his petition as a petition for whistleblower action under sec. 7623(b)(4).

**[\*10]** light most favorable to the nonmoving party. <u>Id.</u> Here, both parties request summary judgment with respect to the WBO's determinations. Since we will grant respondent's motion, we draw factual inferences in favor of Mr. Frantz. <u>See Palmolive Bldg. Inv'rs, LLC v. Commissioner</u>, 152 T.C. 75, 82 (2019). However, the nonmoving party may not rest upon the mere allegations or denials of its pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).

B. <u>Standard and Scope of Review</u>

We review the WBO's determinations regarding an award for abuse of discretion.[9] <u>See</u> <u>Kasper v. Commissioner</u>, 150 T.C. 8, 22-23 (2018). Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. <u>See</u> <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006).

In ascertaining whether the WBO abused its discretion, we generally confine our review to the administrative record. <u>See</u> <u>Kasper v. Commissioner</u>, 150

---

[9]Mr. Frantz argues that because he was "blowing the whistle on himself as a result of incredulous circumstances" and was "the originating taxpayer who becomes responsible for the taxes if his Estate doesn't pay", de novo review applies. We see no justification to depart from our well-established standards governing review of the WBO's determinations.

**[*11]** T.C. at 20.  In this context the administrative record "comprises all information contained in the administrative claim file that is relevant to the award determination and not protected by * * * privileges."  Sec. 301.7623-3(e)(1), Proced. & Admin. Regs.  The administrative claim file, in turn, is defined to include the "Form 211, 'Application for Award for Original Information,' filed by the whistleblower and all information provided by the whistleblower (whether provided with the whistleblower's original submission or through a subsequent contact with the IRS)."  Id. subpara. (2)(i).[10]

II.    Whistleblower Framework

Section 7623(b) provides the circumstances in which the IRS shall give mandatory (i.e., nondiscretionary) awards to whistleblowers.  Before an award can be paid, section 7623(b)(1) requires that the IRS first proceed with an "administrative or judicial action" and collect proceeds from the target taxpayer.

---

[10]In his opposition to respondent's motion for summary judgment and cross-motion for summary judgment, Mr. Frantz contends that "[r]espondent's whistleblower filings are missing requested IRS tax return information."  To the extent that Mr. Frantz is suggesting that the administrative record does not include the supporting documents that he submitted with the Form 211, that contention is belied by the WBO workpapers introduced in support of respondent's motion, which reflect consideration of the attachments to the Form 211.  If Mr. Frantz is instead observing that respondent did not introduce the supporting documents in connection with the motion for summary judgment, he is correct--respondent does not think them material.  We nonetheless consider such documents in the light most favorable to him, as further described supra note 3.

**[\*12]** <u>See</u> <u>Cohen v. Commissioner</u>, 139 T.C. 299, 302 (2012), <u>aff'd</u>, 550 F. App'x 10 (D.C. Cir. 2014); <u>see also</u> <u>Perales v. Commissioner</u>, T.C. Memo. 2018-177, at \*6.

Section 7623(b)(4) grants us jurisdiction to review any determination regarding such an award, including rejections and denials. <u>See</u> <u>Lacey v. Commissioner</u>, 153 T.C. 146, 169 (2019); <u>see also</u> <u>Cooper v. Commissioner</u>, 135 T.C. 70, 75-76 (2010). Although we have jurisdiction to review determinations, we do not have authority to order the IRS to commence an administrative or judicial action, or to review the IRS' determination of the alleged tax liability to which a whistleblower's claim pertains. <u>See</u> <u>Lacey v. Commissioner</u>, 153 T.C. at 166; <u>see also</u> <u>Cohen v. Commissioner</u>, 139 T.C. at 302 (citing <u>Cooper v. Commissioner</u>, 136 T.C. 597, 600 (2011)).

This case involves two distinct types of determinations--rejections and denials--and we describe each in turn.

A.    <u>Rejection</u>

Congress has entrusted to the WBO the initial evaluation of whistleblower claims to determine whether they satisfy the minimum standards for an award.[11]

---

[11]As we observed in <u>Cline v. Commissioner</u>, T.C. Memo. 2020-35, at \*5 n.3, the claim evaluation function of the WBO--which includes claim intake,

(continued...)

[*13] <u>See</u> Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432,

sec. 406(b)(1)(B), 120 Stat. at 2960 (providing that the WBO "shall analyze

information received from any individual * * * and either investigate the matter

itself or assign it to the appropriate Internal Revenue Service office"); <u>see also</u>

sec. 301.7623-1(c)(4), Proced. & Admin. Regs.  Such initial evaluation takes place

before any referral to an IRS operating division for the decision whether to

investigate the target taxpayer.  <u>See</u> <u>Lacey v. Commissioner</u>, 153 T.C. at 162-163;

<u>see also</u> <u>Alber v. Commissioner</u>, T.C. Memo. 2020-20, at *7.

When performing its threshold evaluation, the WBO considers whether the

claim:  (1) contains specific, credible, and nonspeculative information that the

whistleblower believes will lead to collected tax proceeds, (2) reports failure to

comply with the internal revenue laws and identifies the person(s) believed to

have failed to comply with the internal revenue laws, and (3) provides substantive

information in support of the whistleblower's allegations, including all available

documentation.  <u>See</u> sec. 301.7623-1(c)(1), (4), Proced. & Admin. Regs.; <u>see also</u>

<u>Lacey v. Commissioner</u>, 153 T.C. at 160.  As relevant here, a claim is considered

---

[11](...continued)
monitoring, and awards processing--has recently been realigned such that the
operation of this function is now shared by the Small Business/Self-Employed
division, which is an operating division of the IRS.  <u>See</u> IRM pt. 1.1.26.1.3.5
(Jan. 11, 2018).

**[\*14]** purely speculative if it lacks any basis or support for the allegations.  See

Lacey v. Commissioner, 153 T.C. at 161.

The WBO may reject a claim outright in its initial evaluation if it determines

that the claim does not meet the foregoing criteria.[12]  See secs. 301.7623-1(c)(4),

301.7623-3(b)(3), Proced. & Admin. Regs.; see also Lacey v. Commissioner, 153

T.C. at 161.  "A rejection is a determination that relates solely to the whistleblower

and the information on the face of the claim that pertains to the whistleblower."

Sec. 301.7623-3(c)(7), Proced. & Admin. Regs.  Should the WBO determine to

reject a claim, it must provide to the whistleblower written notice stating the basis

for the rejection.  See id. para. (b)(3).

B.    Denial

A denial of a claim occurs when the WBO does not reject the claim in the

threshold but nonetheless determines not to grant an award.  See id. para. (c)(8);

see also Lacey v. Commissioner, 153 T.C. at 161-162.  "A denial is a

determination that relates to or implicates taxpayer information."  Sec. 301.7623-

3(c)(8), Proced. & Admin. Regs.  Consequently, as we have explained, a denial is

---

[12]Besides an outright rejection, the WBO may also choose to notify the whistleblower of the claim deficiency and give him an opportunity to perfect it, or issue the whistleblower a preliminary rejection letter and invite him to submit comments.  See secs. 301.7623-1(c)(4), 301.7623-3(c)(7), Proced. & Admin. Regs. The WBO did not employ these options in the instant case.

**[*15]** made after the WBO has engaged in some substantive consideration of the claim. See Lacey v. Commissioner, 153 T.C. at 161-162. As is the case for rejections, the WBO provides written notice to the whistleblower of the denial of any award, including the basis for the denial. See sec. 301.7623-3(c)(8), Proced. & Admin. Regs.

III.    Analysis

As explained previously, the WBO ultimately generated three separate claims with respect to the Frantzes' Form 211, which it declined by rejection (of the trustee claim) and by denial (of the estate claim and the ancillary claim). None of these determinations was an abuse of discretion.

A.    Rejection of the Trustee Claim

The record before us shows that the WBO classifiers evaluated the Frantzes' claim as it related to the trustee and considered its allegations. During his consideration, the second classifier observed that "[n]o tax issue [was] stated or identified" and that the trustee claim included "[n]o specific and credible information about a federal tax issue or non-compliance". The ultimate determination echoed these observations, with the WBO rejecting the claim because "the information provided was speculative and/or did not provide specific

[*16] or credible information regarding tax underpayments or violations of internal revenue laws."[13]

In reviewing the WBO's rejection we do not substitute our judgment for that of the WBO. We instead review only for abuse of discretion. As an initial matter, in deciding not to forward the claim for any further investigation by an IRS operating division, the WBO plainly performed its evaluative function.

Moreover, the WBO's grounds in support of its determination to reject the trustee claim--that the Frantzes failed to provide specific or credible information regarding tax underpayments or violations of internal revenue laws--do not appear to lack a sound basis in fact or law. The Form 211 did not provide on its face information about tax violations or underpayments of the trustee but instead broadly alleged "tax fraud" on the ground that the trustee provided a "false" 2016 estate tax return that included "no K-1s stating that $-0- taxes due."

---

[13]We have previously noted that the use of this "and/or" formulation often makes it hard to discern the WBO's reasoning, thus complicating our review or making it impossible altogether. See, e.g., Lacey v. Commissioner, 153 T.C. 146, 170 (2019); Alber v. Commissioner, at *8 n.5. In this case, however, the second classifier explicitly premised his rejection recommendation on the conclusion that the Frantzes had provided "[n]o specific and credible information about a federal tax issue or non-compliance", a point likewise adopted in the ARM. We accordingly will review whether rejection under that rationale constituted an abuse of discretion.

[*17] The Frantzes did support the Form 211 with a voluminous draft amended 2017 tax return showing a significant tax liability. But the value of this return was significantly diminished by a letter (also attached to the Form 211) from the C.P.A. who prepared the amended return. The C.P.A. clarified that the "estimated 2017 income tax return [was] based on information * * * [the Frantzes] have provided us" and warned that "[t]his return should not be filed under any circumstance."

We thus hold that the WBO did not abuse its discretion when it rejected the trustee claim, and we will grant summary judgment to respondent as to this claim.

B.      Denial of the Estate Claim and the Ancillary Claim

We likewise see no abuse of discretion in the denial of the estate claim and the ancillary claim. The record before us establishes that the classification function of the WBO evaluated the estate claim and the ancillary claim, considering them in light of the applicable tax reporting and information derived from the IRS' information returns processing system. The WBO concluded that: (1) the estate claim involved an amount that did not warrant an examination of the bankruptcy estate and (2) the ancillary claim revealed no alleged or identified violations in the Frantzes' own tax reporting. The WBO accordingly did not refer these claims to any IRS operating division, and the IRS neither commenced any

[*18] action against, nor collected any proceeds from, a taxpayer as a result of the information the Frantzes supplied. Mr. Frantz does not contest these points.

Even assuming that the trustee improperly omitted income on the bankruptcy estate's tax returns, we see no abuse of discretion in the denial of these claims where there was no administrative or judicial action taken and no proceeds collected on the basis of the information that the Frantzes provided. The WBO recited in its notice that "the information * * * [the Frantzes] provided did not result in the collection of any proceeds", and this ground was sufficient justification to deny the claims. See Kasper v. Commissioner, 150 T.C. at 27-28. Again, we will grant summary judgment to respondent as to these two claims.

C.    Mr. Frantz' Contentions

Mr. Frantz argues that the WBO abused its discretion by failing to launch a thorough investigation into the Frantzes' claims and asks us to direct the IRS to do so. We have no authority to review the IRS' decision not to act on the Frantzes' allegations--that decision is reserved to the discretion of the IRS. See, e.g., Lacey v. Commissioner, 153 T.C. at 163 ("[S]ection 7623(b) does not convert the Tax Court into an overseer of the IRS's audit and collection activity."); Kasper v. Commissioner, 150 T.C. at 20 ("The question before us is also whether the IRS collected proceeds as the result of an administrative or judicial action using the

[*19] whistleblower's information, not whether it could have or should have.");
see also Cohen v. Commissioner, 139 T.C. at 302-304; Cooper v. Commissioner,
136 T.C. at 601. And section 7623(b)(4) does not empower us to require further
administrative or judicial action. See Cohen v. Commissioner, 139 T.C. at 302.

IV. Conclusion

Finding no abuse of discretion in the WBO's determinations with respect to
the Frantzes' whistleblower claims, we will grant respondent's motion for
summary judgment and deny Mr. Frantz' motion.

To reflect the foregoing,

An appropriate order and decision
will be entered.